UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 3:14-CR-85 | |
| v. | ) | | |
| | ) | | |
| ROBERT N. HICKS, | ) | (PHILLIPS / SHIRLEY) | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate. This matter is before the Court on the Government's

Petition to the Court for the Authorization of Involuntary Medication [Doc. 492], filed on April

23, 2015.[1] The parties came before the Court on May 11, 2015, for a hearing on the Petition.

Assistant United States Attorney Caryn L. Hebets appeared on behalf of the Government.

Attorney James W. Clements, III, represented the Defendant Robert Hicks. Although the Court

had arranged for the Defendant to participate in the hearing by video teleconference from the

Federal Medical Center in Butner, North Carolina (FMC Butner), the Defendant declined to

participate.

---

[1] The Government initially asked [Doc. 487] to file the Petition under seal. The Court denied the
request to seal the Petition but permitted the Government to file a redacted version [Doc. 492],
which was filed on May 19, 2015.

1

# I. BACKGROUND AND POSITIONS OF THE PARTIES

The Defendant is charged with conspiracy to manufacture methamphetamine and possession of equipment, chemicals, products, and materials used to manufacture methamphetamine. On August 26, 2014, the Court committed [Doc. 149] Defendant Hicks for a mental evaluation of his competency to stand trial. On November 24, 2014, the Court found [Doc. 231] the Defendant to be incompetent and committed him for four months of evaluation and treatment to restore his competency. FMC Butner received the Defendant on December 23, 2014, and began his evaluation [see Doc. 448]. On March 30, 2015, the Warden at FMC Butner faxed a report entitled Forensic Evaluation[2] by Dr. Robert Cochrane, forensic psychologist, and Dr. Byron Herbel, psychiatrist, to the undersigned. The report states that the Defendant has schizophrenia and recommends that he be involuntarily medicated and treated for an additional four months in order to restore his competency.

On April 23, the Government petitioned the Court to authorize involuntary medication of the Defendant. It argues that involuntary medication is appropriate in this case because (1) the Defendant is charged with a serious crime and no special circumstances diminish the need for prosecution, (2) the administration of psychotropic drugs is substantially likely to render the Defendant competent and substantially unlikely to have side effects that will interfere with his ability to assist with his defense at trial, (3) involuntary medication is necessary to further the Government's interests, and (4) administration of the psychotropic medication is in the Defendant's best medical interest. On May 8, the Defendant, through counsel, filed a response [Doc. 489] opposing involuntary medication. Specifically, he argues that the proposed medication has substantial side effects causing him to be unable to feel emotion or to connect to

---

[2] This report [Doc. 479] is filed in the record under seal and was made a sealed exhibit to the May 11 hearing.

life or the outcome of his case. Also, he contends that measures short of involuntary medication, such as a court order, should be attempted before forcing him to take medicine against his will.

## II.     TESTIMONY AT MAY 11 HEARING

At the May 11 hearing, Dr. Robert Cochrane testified by video teleconference. His twenty-five (25)-page Forensic Evaluation was made an exhibit to the hearing. Dr. Cochrane testified that the medications listed in his Forensic Evaluation were all well established and FDA approved. He said that the overwhelming majority of individuals suffering from schizophrenia were restored to competency after taking psychotropic medication. He stated that an individual's treatment history shows how that individual will respond to psychotropic medications. He said that the Defendant had previously responded well to psychotropic medications and had been rendered competent while taking these medications pursuant to a state court order. He said that side effects, such as sedation, usually go away in a couple of weeks and, if not, can be managed by providing a lower dose of the medicine or switching medications. He stated that an eight-week course of treatment was common and that usually medical staff can tell if the individual is responding to the medication within a couple of weeks. Dr. Cochrane testified that, in his opinion, the Defendant's competency would not be restored if he were not treated with psychotropic medication. He stated that treatment of schizophrenia with these medications is the standard of care both in the community and in forensic situations.

On cross-examination, Dr. Cochrane testified that the proposed psychotropic medications help some patients express emotion, rather than stifling emotion. He agreed that these medications can sedate some patients and affect their neuromuscular ability, but he stated that these effects can be managed. He agreed that the medications could affect an individual's

demeanor, if not managed. He said that individuals with schizophrenia often do not recognize that they have mental health issues and do not want to take psychotropic medication. He said that although Defendant Hicks had experienced positive results with previous treatment, Hicks had repeatedly told Dr. Cochrane that he does not want to be medicated.

Dr. Cochrane stated that during his employment at FMC Butner, court orders directing an inmate to take medication had been issued in three prior cases, with three different outcomes: one individual continued to refuse to take the medication, one person appeared to agree to take the medication but later refused, and one patient agreed to take the mediation voluntarily in light of the court order. He agreed that Hicks had not yet been ordered by the Court to take the medication. Dr. Cochrane stated that the Defendant was presently refusing to sign the paperwork necessary to be released into the general prison population. He said that while it might benefit Defendant Hicks to be around other people, it would not be a significant step toward treating his schizophrenia. He said that Mr. Hicks has a biological problem that needs a biological treatment in the form of medication. He agreed that other therapies, such as group therapy, might be effective after the Defendant received medication. He reiterated that group therapy without medication would not be an effective treatment for the Defendant.

Upon questioning by the Court, Dr. Cochrane testified that he proposed starting the Defendant's treatment with alonzapine, also known as Zyprexa. He said, if the Defendant is able to take the medication orally, he will start with 20 milligrams and adjust the dosage as needed. He stated that if the Defendant refused oral medication, he would move to injectable medication such as Respiradol. If the Respiradol was not effective, there were other medications he could try. Dr. Cochrane stated that if the Defendant experienced a feeling of being unable to connect or to feel emotion, this side effect would not affect his cognitive ability to deal with legal

4

issues. He said that in some cases, the medication improved the patient's attention and other intellectual abilities.

### III. ANALYSIS

"An individual has a constitutionally protected liberty interest in avoiding the unwanted administration of medication, and the Government may not deprive him of this liberty without an essential or overriding interest in doing so." United States v. Mikulich, 732 F.3d 692, 696 (6th Cir. 2013). The Supreme Court has held that the Constitution permits the Government to medicate a nonviolent, mentally ill defendant in a criminal case involuntarily in certain limited circumstances, in order to render the defendant competent to stand trial. Sell v. United States, 539 U.S. 166, 179 (2003). This is because the Government has a recognized countervailing interest in safeguarding the security of its citizens by the prompt administration of justice in criminal cases. Sell, 539 U.S. at 180; Mikulich, 732 F.3d at 696.

"Pursuant to Sell, the Government must present clear and convincing evidence of four factors in order to secure an order of involuntary medication: (1) the existence of an 'important' governmental interest; (2) that involuntary medication will 'significantly further' the government interest; (3) that involuntary medication is 'necessary' to further those interests; and (4) that administration of the drugs must be 'medically appropriate' for the individual defendant." United States v. Green, 532 F.3d 538, 545 (6th Cir. 2008) (quoting Sell, 539 U.S. at 180–81); Mikulich, 732 F.3d at 696. In Sell, the Supreme Court recognized that the involuntary administration of medication should be rare. 539 U.S. at 179. The Fourth Circuit has characterized forcibly medicating a nonviolent defendant as a "'drastic resort' that, if allowed to become 'routine,' could threaten an elementary 'imperative of individual liberty.'" United States

5

v. Chatmon, 718 F.3d 369, 373 (4th Cir. 2013) (quoting United States v. White, 620 F.3d 401, 422 (4th Cir. 2010)). "While involuntary medication orders may sometimes be necessary, they carry an unsavory pedigree." Id. at 374. To insure that forcible medication does not become the rule, rather than the exception, the Court must carefully consider the facts of each individual case. See Sell, 539 U.S. at 180. In the instant case, the Defendant challenges the Government's proof of the second and third factors.[3]

### A. Side Effects of Involuntary Medication

The Defendant opposes involuntary medication primarily because he states that the medication causes substantial side effects that will interfere with his ability to participate in his defense. He contends that the psychotropic medication causes him to feel emotionally detached from his life and the outcome of his case. He asserts that he has discontinued using psychotropic medication in the past because it prevents him from feeling any emotion or having "any true connection to his life[.]"

---

[3] Although not challenged by the Defendant, the Court also finds that the Government has shown clear and convincing evidence of the first and fourth factors. As to factor one, the Defendant faces a mandatory minimum sentence of ten years imprisonment, which sentence was found to reveal an important Government interest in United States v. Green, 532 F.3d at 549, a case in which an incompetent defendant was charged with drug trafficking. Moreover, no factors, such as the potential for the defendant to serve a lengthy commitment to a mental hospital or the fact that the defendant has already been confined for a long time, mitigate the Government's interest in prosecuting Defendant Hicks. See id. The Court finds that the Government has shown by clear and convincing evidence an important governmental interest in prosecuting Defendant Hicks.

With regard to factor four, Dr. Cochrane testified that treatment with psychotropic medication was the standard of care for treating schizophrenia in both forensic and non-forensic cases. He said that the overwhelming majority of schizophrenic defendants who were treated with psychotropic medications were restored to competency and that the Defendant had previously been restored to competency with this medication. Finally, he testified that the proposed psychotropic medication has few side effects and that these side effects could be addressed by changing dosage or medication, if they emerged in Defendant Hicks. The Court finds that the Government has shown by clear and convincing evidence that administering the psychotropic medication is medically appropriate for Defendant Hicks.

6

Once the Court finds that an important Government interest exists, it must find that involuntary medicating the Defendant will significantly further that interest. <u>Sell</u>, 539 U.S. at 180. Specifically, the Court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." <u>Id.</u> at 181. The Court finds that administration of psychotropic medication to treat his schizophrenia is substantially likely to render Defendant Hicks competent to stand trial. Dr. Cochrane testified that the administration of the specific psychotropic medications he intends to use rendered the overwhelming number of defendants suffering from schizophrenia competent in other cases in which he has been involved. Moreover, and more importantly, the use of psychotropic medication (Zyprexa and Haldol) has rendered this Defendant competent in 2012. Dr. Cochrane testified that the best indicator of the effects of psychotropic medication in an individual is prior use of that medication by the individual. Accordingly, the Government has provided clear and convincing evidence that the administration of psychotropic medication is substantially likely to render Defendant Hicks competent to stand trial.

The Defendant contends that the Government has failed to meet the second half of this test, because the psychotropic drugs cause him side effects that prevent him from caring emotionally about the outcome of his case. The Court finds that the evidence before it contradicts this argument. First, the Forensic Evaluation states that, a review of the Defendant's mental health records since 2012, reveals that the Defendant "responded rather favorably to treatment with antipsychotic medication, with no evidence of significant side effects." [Exh. at p.5] Second, although Dr. Cochrane testified that psychotropic medications can have side effects

7

and that some people experience "sedation" as a side effect of psychotropic medication, if the Defendant experienced sedation with the psychotropic medication, Dr. Cochrane and his staff could adjust the dosage or type of medication until they arrived at dose or medication that did not cause side effects in the Defendant. Third, Dr. Cochrane testified that even if the Defendant experienced a feeling of being unable to connect or to feel emotion, this side effect would not affect his cognitive ability to deal with legal issues.

The Court heard no evidence to contradict the Forensic Evaluation or Dr. Cochrane's testimony. Thus, the Court finds that the Defendant is unlikely to experience any lasting side effects and that, in any event, the side effect about which the Defendant is concerned, namely a numbed emotional response, would not substantially interfere with his ability to participate in his defense. Accordingly, the Court finds that the Government has shown by clear and convincing evidence that involuntarily medicating the Defendant will significantly further the important Government interest.

### B. Necessity of Involuntary Medication

The Defendant also argues that the Government has failed to show that other, less intrusive measures would not be successful in bringing about his competence. Specifically, he argues that the Government has not shown that a Court Order, directing him to take the psychotropic medication and enforced by the Court's contempt power, would not be effective. He contends that his history demonstrates that he has previously voluntarily agreed to take medication once facing a court's order that he be involuntarily medicated. Citing to the Fourth Circuit in United States v. Chatmon, 718 F.3d 369, 375 (4th Cir. 2013), he argues that without attempting this less intrusive alternative, the Court cannot find that the Government has satisfied this prong. The

Government argues that given the Defendant's refusal to speak to or cooperate with the staff at FMC Butner or his attorney and also the Defendant's history of noncompliance with prescribed medication, methods short of involuntary administration of psychotropic medication (such as psychotherapy) are not likely to restore the Defendant's competency. Thus, the Government maintains that involuntary medication is necessary in this case.

Elaborating upon the third Sell factor, the Supreme Court stated that in addition to finding that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results[,]" . . . "the court must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods." Id. at 181. In Chatmon, the Fourth Circuit remanded the case for the district court to consider alternative treatments (psychotherapy and living in an open population unit, rather than solitary confinement) raised by the defendant and an alternative procedure to forced medication, namely a court order for the defendant to take the medication. 718 F.3d at 376-77. In the instant case, Defendant Hicks does not propose alternative treatments to antipsychotic medication. Moreover, Dr. Cochrane testified that psychotherapy might be helpful if used along with antipsychotic medication but would not restore the Defendant's competency in the absence of the medication. Dr. Cochrane also testified that the Defendant refused to sign the necessary paperwork that would permit him to live in the open population.

The Defendant proposes that the Court order him to take the antipsychotic medication recommended by the staff at FMC Butner and give him an opportunity to comply with the Court's Order, prior to ordering that he be involuntarily medicated. In support of this procedure, he contends that he has voluntarily taken antipsychotic medication in the past when presented with a court order that he be involuntarily medicated. The Court finds that the evidence before it

does not quite bear this out. The Forensic Evaluation states that the Defendant was involuntarily medicated in Florida in the spring or early summer of 2012. [Exh. at p.3] After the involuntary medication commenced, he continued to disagree with taking psychotropic medication "and often voiced his intention to hurt someone if medications were forced on him." Id. After being involuntarily medicated for a few weeks, Defendant Hicks then decided to take the psychotropic medications voluntarily. Id. The Court infers that the Defendant's decision to take the medication voluntarily was not due to the court's order but, instead, was perhaps due to his becoming less psychotic after taking the medication for a few weeks. The report mentions two other instances in which the Defendant initially refused antipsychotic medication but then changed his mind and began taking the medication voluntarily. [Exh. at 4] Neither of these occasions was in response to a court order.

The medical staff at FMC Butner believe that a Court Order is unlikely to result in the Defendant voluntarily taking the antipsychotic medication. The Forensic Evaluation states that three nonviolent incompetent pretrial detainees have been presented with court orders. [Exh. at 16] In one case, the defendant ignored the order; in the second case, the defendant at first agreed to take the medication voluntarily but ultimately refused; and in the third case, the defendant complied with the court order in order to avoid being involuntarily medicated. Id. The report states that in two of these cases, using a court order only served to extend the time during which the defendant was incarcerated before trial by delaying the involuntary medication order. Id. The report states that "there is no compelling evidence that an incompetent defendant should reasonably be expected to have the mental capacity to understand the implications of a contempt order as a basis for making a rational decision on whether to comply with it." Id. Dr. Cochrane's testimony at the May 11 hearing echoed the opinion expressed in the report. He

pointed out that in his current mental state, the Defendant refused even to sign the paperwork that would allow him into the less restrictive living quarters.

Based on the Forensic Evaluation and Dr. Cochrane's testimony, the Court finds compelling evidence that a Court Order backed by the threat of contempt will have little effect in this case. However, the cost of using a modified order that provides the Defendant a brief opportunity to take the medication voluntarily before the order to involuntarily medicate him is enforced seems small. Accordingly, the Court finds that although the Government has provided clear and convincing evidence of the third Sell factor—that less intrusive methods, short of involuntary medication, are unlikely to achieve substantially the same result—the Defendant should be afforded one more opportunity to take the antipsychotic medication voluntarily, knowing that the Court has ordered that it will be administered involuntarily, if he continues to refuse.

In summary, the Court finds that the Government has shown clear and convincing evidence of all four Sell factors. The instant case is one of those rare cases in which involuntary medication of the Defendant is necessary. The Defendant is **ORDERED** to take the antipsychotic medication proposed by Dr. Cochrane and the staff at FMC Butner. The Defendant shall have **ONE WEEK** from his receipt of and being advised of this Order to take the medication voluntarily. The Government's Petition to the Court for the Authorization of Involuntary Medication [**Doc. 492**] is **GRANTED** in part, in that if Defendant Hicks refuses to voluntarily begin his course of antipsychotic medication within one week of his receiving a copy of this Memorandum and Order, then the staff at FMC Butner is **DIRECTED** to administer the antipsychotic medication involuntarily, according to the treatment regimen testified to and

11

described by Dr. Cochrane at the May 11 hearing and set out in detail in the Proposed Treatment

Plan in the Forensic Evaluation.

## IV. CONCLUSION

The Court finds by clear and convincing evidence that Defendant Robert Hicks

should be involuntarily medicated in order to restore his competency.   Therefore, it is

**ORDERED** as follows:

> (1)  The Government's Petition to the Court for the Authorization
> of Involuntary Medication [**Doc. 492**] is **GRANTED** in part,
> in that antipsychotic medication will be administered to the
> Defendant involuntarily if he does not begin taking the
> medication voluntarily within one week of his receipt of this
> Memorandum and Order;
>
> (2) The Clerk of Court is **DIRECTED** to serve copies of this
> order on counsel of record, on Warden Kenny Atkinson at
> FMC Butner, on Drs. Robert Cochrane and Byron Herber at
> FMC Butner, and to serve three certified copies on the United
> States Marshal;
>
> (3) Dr. Cochrane is **ORDERED** to provide Defendant Hicks with
> a copy of this Memorandum and Order, upon his receipt of
> same;
>
> (4) Defendant Robert Hicks is **ORDERED** to take the
> antipsychotic medication prescribed by Drs. Cochrane and
> Herbel and the staff at FMC Butner.  If Defendant Hicks does
> not take this medication voluntarily within one week of
> receiving a copy of this Memorandum and Order, then the
> medication will be involuntarily administered;
>
> (5) Following the one-week period in which the Defendant may
> elect to take the medication voluntarily, Drs. Cochrane and
> Herbel and the staff at FMC Butner are authorized to
> administer antipsychotic medication to Defendant Hicks
> involuntarily in accord with the treatment described by Dr.
> Cochrane at the May 11 hearing and set out in detail in the
> Proposed Treatment Plan in the Forensic Evaluation;

(6) All other provisions of the Court's prior Order of Continued Commitment [Doc. 466] of April 3, 2015, remain in effect;[4] and

(7) The United States Marshal is **DIRECTED** to notify the Clerk of the Court and the undersigned's office promptly when Defendant returns to this jurisdiction from the mental evaluation and treatment

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] In the Forensic Evaluation, Drs. Cochrane and Herbel appear to ask the Court to order that the Defendant receive four months of treatment pursuant to 18 U.S.C. §4241(d) from the beginning of involuntary medication. [Exh. at 23] At the time the Court received the Forensic Evaluation, less than one month remained of the four months of treatment previously ordered. Accordingly, in its April 3 Order of Continued Commitment [Doc. 466], the Court ordered that the Defendant remain in custody and hospitalized at FMC Butner for an additional four-month period for treatment, evaluation, and testing. The Order of Continued Commitment further provides that if at the end of this four-month treatment period, the evaluating staff at FMC Butner determine that an additional reasonable period of treatment is needed, the facility shall send the Court a written request for an additional four-month period.